## Village of Harvey v. John P. Wilson, Nathan G. Moore and William B. McIlvaine, Co-partners as Wilson, Moore & McIlvaine.

1. CITIES AND VILLAGES—*Power to Employ Counsel.*—The board of trustees has the power to employ counsel to defend the village in a proceeding which goes to its very existence as a corporation.

2. SAME—*Contracts by President, When Binding.*—A village is liable for the value of the services of an attorney though there is no formal contract of employment, nor any ordinance nor resolution adopted by the common council directly authorizing or ratifying the action of the president of the town in requesting the performance of such services.

3. CONTRACTS—*Which May Be Ratified.*—Where a contract entered into on behalf of a named principal is one which the principal himself might lawfully make, it may be ratified and thus given effect.

4. RATIFICATION—*Need Not Be Express.*—It is not necessary that a ratification should be express. It may, like most other facts *in pais*, be proved by circumstances. So a ratification may be inferred from acquiescence after notice.

5. SAME—*What Act Works an Estoppel.*—Any positive acts by municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, will work an estoppel.

6. CONTRACTS—*Of Municipalities—Ultra Vires.*—Where a contract of a municipal corporation has no element of illegality in it, the only objection to it is a defect of power in respect to the terms of its duration. The doctrine that where the corporation has received benefits under a

contract which is merely *ultra vires*, it shall pay for those benefits, should be applied.

7. SAME—*Liability for Contracts— Ultra Vires.*—The doing of an authorized thing by a municipal corporation in a proper way become as legitimate charge upon the revenues of the municipality; so when it is done in an unauthorized way but is accepted, the municipality gets what it had authority to get in a different way, and should pay for it what it would have had to pay had it got it in the proper way.

**Assumpsit,** for legal services. Trial in the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Finding and judgment for plaintiffs. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed October 17, 1898.

FRANK L. STOBBS, attorney for appellant.

MAX BAIRD, attorney for appellees.

Municipal corporations can be bound by implied contracts to be deduced by inference from corporate acts without either a vote, or deed, or writing.   Town of New Athens v. Thomas, 82 Ill. 259; Seagraves v. City of Alton, 13 Ill. 366; Gas Company v. San Francisco, 9 Cal. 453; 15 Am. & Eng. Enc., 1083, note 1.

Municipal corporations may ratify the unauthorized contracts of its agents which are within the corporate powers by acquiescing therein after knowledge, or by acts inconsistent with other supposition.   Town of Bruce v. Dickey, 116 Ill. 527; Connett v. Chicago, 114 Ill. 233; Supervisor v. Schenck, 5 Wall. 722; 1 Dillon Mun. Corp., Sec. 386; Logansport v. Dykeman, 116 Ind. 15.

A municipal corporation is bound to pay for benefits received under an executed contract, although the contract may be *ultra vires.*   East St. Louis v. Gas Company, 98 Ill. 415; P. & S. R. R. Co. v. Thompson, 103 Ill. 187; Badger v. Inlet Drainage Co., 141 Ill. 540; Carlyle Water Co. v. Carlyle, 31 Ill. App. 325; Ibid., 140 Ill. 445.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

This suit was commenced by appellees on the common counts to recover on a *quantum meruit* for legal services

rendered by them in defending a proceeding of quo warranto brought against the village of Harvey to oust it of its franchises. There is no dispute but that the· services sued for were rendered by appellees and that they were reasonably worth the amount claimed, $560, for which judgment was entered for appellees; but it is contended that the trial court erred in the admission of improper evidence on behalf of appellees, in excluding proper evidence offered for appellant, in holding, refusing to hold, and in modifying certain propositions of law, and in not rendering judgment on the evidence for appellant. The quo warranto suit, which questioned the corporate existence of the village, was begun and service had upon the president and each member of the board of trustees. At the request of the trustees, the president of the board and one of the trustees employed appellees to defend the suit, but no record in the proceedings of the board of trustees, so far as shown, was made of this request or the fact that appellees had been employed. It does, however, appear that during the pendency of the suit the president of the village and one of the trustees inquired about the progress of the case from time to time and when a decision could be looked for. The attorney for the village of Harvey, at the direction of the president and board of trustees, called upon appellees during the pendency of the case in the Supreme Court, to see them concerning the suit. He asked appellees as to the status of the case and received from them a copy of their brief, which he said he would examine, and a few days later stated to one of appellees that the matter was satisfactory in the form in which it stood.

After the case was decided in favor of the village in the Supreme Court, appellees presented their bill for services to the village, but were answered by its attorney that no record of appellee's employment could be found, and the board of trustees refused to pay the bill.

The evidence admitted, of which appellant complains, is of conversations between one of appellees and the president and members of the board of trustees of the village and its

attorney in regard to appellees' employment and the status
and progress of the quo warranto case from time to time,
and also of the services rendered by appellees. The ground
of the objection is that no such evidence was admissible,
because there was no record in the proceedings of the village
board (which is conceded by appellees to be true) of appel-
lees' employment, or of authority for such employment, or
of ratification thereof by the board. We think the evidence
was competent, if for no other purpose, as tending to show
notice to the board of trustees of the fact that appellees
were acting for the village of Harvey, and rendering service
for it in a court proceeding going to the very existence of
the village, and of the trustees' acquiescence in and ratifica-
tion of appellees' employment by the president and one of
the trustees. Appellant, in support of its objection, cites
the statutes (Hurd's, Ch. 24, Secs. 37, 39 to 41), which define
the manner in which a village shall incur indebtedness and
transact business, and requiring it to keep a journal of its
proceedings, and that the yeas and nays shall be taken upon
the passage of all ordinances and on all propositions to
create any liability against it, or for the expenditure or
appropriation of its money; and argues from this that there
is no power of any officer or individual to contract for a
village, and that all liabilities attempted to be incurred by
a board of trustees must be made a matter of record, in the
proceedings of the board, in order to be binding on the
village.

Numerous cases are also cited in this connection, which
we deem it unnecessary to review, because, in our opinion,
they are not applicable to the case at bar.

Appellant also complains that the court excluded evi-
dence offered for the purpose of showing that no appropria-
tion was ever made by the board of trustees providing for
the employment or payment of appellees for the services in
question.

In support of this contention appellant relies upon the
statute (Hurd's, Ch. 24, Secs. 89 to 91), providing, in sub-
stance, that the trustees of villages shall pass an ordinance

the first quarter of each fiscal year appropriating such sum
or sums of money as may be deemed necessary to defray all
necessary expenses and liabilities of the corporation, and that
no further appropriation shall be made at any other time
within such fiscal year unless first sanctioned by a majority
of the legal voters of the village; also further providing that
neither the trustees nor any officer of the corporation shall
add to the corporation expenditures in any one year any-
thing over or above the amount provided for in the annual
appropriation of that year, with certain exceptions not here
material; also further providing that no contract shall be
made by a board of trustees or member thereof, and no
expense incurred by any of the officers or departments of
the corporation, whether the expenditure should be ordered
by the board of trustees or not, unless an appropriation
shall have been previously made concerning such expense,
with certain exceptions not here material. Appellant argues
that if no appropriation was made, there could be no lia-
bility. Cases are also cited in support of this contention,
which we do not review for the same reasons stated above
as to the evidence admitted.

The propositions of law refused and modified by the court,
so far as necessary to be considered, were, in substance, in
accordance with appellant's contentions above stated, and
the propositions held by the court, and the court's action in
rendering judgment against appellant, seem to be based
upon the theory, so far as we can gather from the record
and arguments of counsel, that appellant's liability rests,
and is placed upon an implied contract or an executed
contract, which, though entered into by the trustees in the
first instance, without the formality of a record thereof, or
previous appropriation to pay the indebtedness incurred
under it, became binding by a subsequent ratification or
acquiescence therein, with full knowledge of appellee's
action pursuant to the contract, the appellant having
received all benefit from the contract.

There is no doubt but that the board of trustees had the
power to employ counsel to defend the village in a proceed-

Village of Harvey v. Wilson.

ing which went to its very existence as a corporation.  In fact, this is practically conceded by appellant.  Hurd's Rev. Stat., Ch. 24, Art. 11, Secs. 8 and 11; Dutton v. City of Aurora, 114 Ill. 138; City of Roodhouse v. Jennings, 29 Ill. App. 50, and cases cited.

Each member of the board of trustees, including the president, was served with the writ, and it at once became their imperative duty as trustees to defend the suit.  They discussed the matter among themselves, and as a result of such discussion, the president and one of the trustees, acting for the others, employed appellees to defend the suit.  Appellees did defend the suit successfully, both in the Circuit and Supreme Courts, and the trustees, as well as the village attorney, were advised from time to time of the status and progress of the proceeding.  The village has had the benefit of these services, knew all about appellees' employment and the extent and nature of their services while they were being rendered, and notwithstanding, a new board of trustees say to appellees : True, you rendered these services, they are worth what you claim, we have had the benefit of them in the vindication of the very existence of the village of Harvey in the adjudication of the court of the highest resort in the State, but we had a village attorney who should have done this work; we have no record that you were ever employed, or that we authorized or ratified your employment; we have made no appropriation to pay you, and we will not pay.

Such a position is most unconscionable and should not receive the sanction of any court, unless to do so is to obey some positive behest of the law, which fortunately for the maintenance of fair dealing and good morals, is not the case.  In Town of New Athens v. Thomas et al., 82 Ill. 250, which was a suit by appellees to recover the value of their services rendered to appellant, the sole defense being that appellees had not been employed by the town in its corporate capacity, the Supreme Court, after stating the general rule, as contended for by appellant, said: " Indeed, every step taken by appellees in the adjustment of the matter in

controversy was with the full knowledge, approbation and consent of the president and common council of the town. Can the town now be heard to say, after it has received the benefit of appellees' skill and labor in its behalf, and after it has recognized the employment by various corporate acts, that appellees were not employed? To so hold would neither be just nor in harmony with the current of authority on the subject."

The town was held liable for the value of the services though there was no formal contract of employment, nor any ordinance nor resolution adopted by the common council directly authorizing or ratifying the action of the president of the town in requesting appellees to perform the services.

In speaking of the question of ratification of a contract made by the city attorney on its behalf, his authority being questioned, the Supreme Court, in Connett v. City of Chicago, 114 Ill. 233, say: "No doctrine of the law is better settled than that where the contract entered into on behalf of a named principal is one which the principal himself might lawfully make, it may be so ratified, and thus given effect. Nor is it necessary such ratification should be express. It may, like most other facts *in pais*, be proved by circumstances. (Citing authorities.) So a ratification may be inferred from acquiescence after notice." (Citing cases.)

In Martel v. City of E. St. Louis, 94 Ill. 67, the court say: "Any positive acts by municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, will work an estoppel."

In Badger v. Inlet Drainage Co., 141 Ill. 549, the Supreme Court in discussing a similar question, and referring to the case of East St. Louis v. Gas Co., 98 Ill., *infra*, said: "It was held in that case that where the contract of a municipal corporation has no element of illegality, the objection made to it only alleging a defect of power in respect to the terms of its duration, the doctrine that where a corporation

has received benefits under a contract which is merely *ultra vires*, it shall pay for those benefits, should apply to the municipal corporation with equal force as in any case of a private corporation.   But in such cases there is power to do the particular thing, only it is not authorized to be done in the way it is done.   The doing of the thing in a proper way is a legitimate charge upon the revenues of the municipality, and so when it is done and is accepted and enjoyed by the municipality, the municipality gets what it had authority to get in a different way, and it should therefore pay for it what it would have had to pay had it got it in the right way."

See also, to like effect, Blake Mfg. Co. v. Sanitary District, 77 Ill. App. 289; Maher v. City of Chicago, 38 Ill. 266, and cases cited; R. R. Co. v. Thompson, 103 Ill. 202, and cases cited; East St. Louis v. Gas Co., 98 Ill. 415.

In view of the foregoing authorities and the facts recited, we are of opinion that it is no defense to appellees' claim that there was no record made either of their employment, authority therefor, or ratification thereof, or that appellant had a village attorney during the period appellees' services were rendered, and there being no material error in the proceedings of the Circuit Court, the judgment will be affirmed.